IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRINTFLY CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>JWT PRODUCTIONS, INC. d/b/a THREAD LOGIC and ROI REVOLUTION, INC,<br><br>　　　　　　　Defendants. | CIVIL ACTION<br>NO. 25-0030 |

## OPINION

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　November 4, 2025

### I.　INTRODUCTION

　　This case arises out of Defendant JWT Productions, Inc's ("Thread Logic") alleged unlawful infringement of Plaintiff Printfly Corporation's ("Plaintiff") "Rush Order Tees" trademark ("ROT Trademark" or the "Trademark"). (See Doc. No. 10.) The trademark was used by Defendant ROI Revolution, Inc. ("ROI"), Defendant Thread Logic's marketing agency, to draw potential customers to Thread Logic's website. (See id.) When a potential customer searched the term "Rush Order Tees," an advertisement for Thread Logic's website would be displayed with the words "Rush Order Tees" underneath the name Thread Logic. (Id. at ¶ 32.)

　　As explained more thoroughly below, only Defendant ROI has filed a Motion to Dismiss the Amended Complaint (Doc. No. 13). The Motion (Doc. No. 13) will be granted for the following reasons. First, the Court does not have general personal jurisdiction over Defendant ROI because ROI is incorporated and has its principal place of business in North Carolina. Second, no specific personal jurisdiction over ROI exists because ROI's actions do not satisfy the Calder "effects" test or the traditional test for specific jurisdiction. Third, jurisdictional discovery is not

1

appropriate in this case because Printfly has not made a threshold showing that the Court may have specific personal jurisdiction over ROI.

## II.     BACKGROUND

### A.     Factual Background

Printfly is a Philadelphia-based company that engages in the e-commerce sale of custom apparel and promotional products through their website www.rushordertees.com ("ROT website"). (Doc. No. 10 ¶ 21.) Plaintiff owns the federal trademark for the term "Rush Order Tees," which is registered with the United States Trademark Principal Register.[1] (Doc. Nos. 10 ¶ 21, 10-2.) Thread Logic is a Minnesota corporation that competes with Printfly in the custom apparel and promotional product marketplace. (Doc. No. 10 ¶ 3, 10.)

Printfly alleges that ROI provided its digital marketing services to Thread Logic. (Doc. No. 10 ¶ 28.) As a digital marketing agency, ROI provides "paid search and retail advertising, conversion rate optimization services, programmatic advertising, search engine optimization, and data analytics services." (Doc. No. 13-1 at 8.) ROI is incorporated and maintains its principal place of business in Raleigh, North Carolina where it manages employees, documents, and records. (Id. at 7.) ROI is not registered to do business in Pennsylvania, nor does it have any physical assets, property, bank accounts, telephone numbers, or registered agents in Pennsylvania. (Id.)

In the Amended Complaint, Printfly alleges that ROI created online advertisements for Thread Logic using its ROT trademark. (Id. at ¶ 5.) Specifically, Printfly claims that the

---

[1]  The Principal Register is the primary list on which   trademarks that meet certain federal filing standards are placed. Cornell Law School, *Principal Register*, Legal Information Institute (last visited Oct. 24, 2025) https://www.law.cornell.edu/wex/principal_register. See also 15 U.S.C. 1051.

advertisements created by ROI used the term "Rush Order Tees" in the heading and text of multiple paid search engine advertisements. (Id. at ¶ 30.) Printfly asserts that ROI created these advertisements using Google's "dynamic keyword insertion" feature, which inserts the ROT trademark into Thread Logic's Google advertisements when a customer uses the ROT trademark as a search term. (Id. at ¶ 32.)

Plaintiff, through its agents, ordered items advertised on the Thread Logic website for individuals residing in the Eastern District of Pennsylvania. (Doc. Nos. 10 ¶ 15, 10-1.)

### B. Procedural Background

On April 30, 2025, Plaintiffs filed their Amended Complaint. (Doc. No. 10.) On July 7, 2025, Defendant ROI filed a Motion to Dismiss the Amended Complaint.[2] (Doc. No. 13.) On August 4, 2025, Plaintiff filed a Memorandum in Opposition to Defendant ROI's Motions to Dismiss. (Doc. No. 19.) On August 18, 2025, Defendant ROI filed a Reply in Support of its Motions to Dismiss. (Doc. No. 25.) On September 15, 2025, the Court held a hearing on the Motions. (See Doc. No. 26.) The Motion is now ripe for disposition.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides that a motion to dismiss a complaint may be filed when the court does not have personal jurisdiction over a defendant. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (citation omitted). To show personal

---

[2] In its Motion to Dismiss, Defendant ROI requested that, as an alternative to dismissing the Complaint, this case be transferred to the United States District Court for the Eastern District of North Carolina. (See Doc. No. 13-1 at 14–17.) Because Printfly stated at the hearing held on September 15, 2025 if the Court were to find no personal jurisdiction over ROI it would not consent to the case being transferred to North Carolina. Therefore, the Court need not consider the Defendant ROI's request to transfer the case.

jurisdiction, the plaintiff may rely on the allegations in the complaint, affidavits, or other evidence. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation and citation omitted). However, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may not merely rely on the allegations in its complaint." Deardorff v. Cellular Sales of Knoxville, Inc., Civil Action No. 19-2642-KSM, 2020 WL 5017522, *1-2 (E.D. Pa. Aug. 25, 2020) (emphasis in the original) (citation omitted). If the court "does not conduct [an] evidentiary hearing . . . [the] plaintiff need only plead [a] prima facie case" of jurisdiction to defeat a motion to dismiss. Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted). In deciding a motion to dismiss for lack of personal jurisdiction, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Id. (citations omitted).

IV.   ANALYSIS

   A. The Court Lacks General Personal Jurisdiction Over Defendant ROI

A court may exercise general personal jurisdiction over a nonresident party when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (citations omitted). "For a corporation, 'the place of incorporation and principal place of business' are where it is 'at home' and are, therefore, the paradigm bases for general jurisdiction." Malik v. Cabot Oil & Gas Corp., 710 F.App'x 561, 563 (3d Cir. 2017) (citing Daimler, 134 571 U.S. at 127).

Here, Defendant ROI is incorporated in and has its principal place of business in North Carolina. (Doc. No. 13-1 at 11.) Furthermore, Plaintiff acknowledged that "there is no general jurisdiction in this matter." (Doc. No. 19 at 5.) Accordingly, Defendant ROI is not "at home" in Pennsylvania.

4

### B. The Court Lacks Specific Personal Jurisdiction Over Defendant ROI

As discussed above, "[p]ersonal jurisdiction may be either general or specific." General Elec. Co., 270 F.3d at 150. While the Court noted, supra, that it does not have general personal jurisdiction over Defendant, personal jurisdiction may arise over a defendant through specific personal jurisdiction. The United States Supreme Court has articulated two tests for specific jurisdiction: (1) the Calder "effects" test or (2) the traditional "minimum contacts" test. "The Calder 'effects' test requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." Hasson v. FullStory, Inc., 114 F.4th 181, 187 (3d Cir. 2024). The traditional test for specific jurisdiction also entails a three-step analysis. D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). First, the court must evaluate whether the defendant established minimum contacts by "deliberately 'reach[ing] out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021) (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)). Second, the court must determine whether the litigation "arise[s] out of or relate[s] to" at least one of those contacts. Ford Motor, 592 U.S. at 352 (quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cnty., 582 U.S. 255, 262 (2017)). Third, if the first two requirements are met, a court may consider whether exercising personal jurisdiction over the defendant "offend[s] traditional notions of fair play and substantial justice." Ford Motor, 592 U.S. at 358 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945)).

The Third Circuit Court of Appeals recently clarified that, while Calder's "effects" test is often applied "in assessing personal jurisdiction over intentional tortfeasors, . . . Calder [did not] carve out a special intentional torts exception to the traditional specific jurisdiction analysis."

Hasson, 114 F.4th at 189 (alteration in original). Accordingly, with this clarification in mind, the Court will consider whether it has specific jurisdiction over Defendant ROI under both the Calder "effects" test and the traditional test. See id. at 197 ("Though we agree with its application of Calder, the District Court also should have considered whether specific personal jurisdiction was proper under the traditional test as applied in Ford Motor.")

        **1.     The Court Does Not Have Specific Jurisdiction Over Defendant ROI Under the Calder "Effects" Test**

Defendant ROI argues that the Court does not have specific jurisdiction under the Calder "effects" test because it did not "expressly aim" its alleged conduct at Pennsylvania, as required by the third prong of the "effects" test. (Doc. No. 13-1 at 16.) To satisfy the express aiming prong, the plaintiff must show the following: (1) the defendant committed an intentional tort; (2) defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum; and (3) point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 266 (3d Cir. 1998).

Here, because Plaintiff fails to meet the requirements to satisfy the express aiming prong, the Court does not have specific jurisdiction over Defendant ROI under the "effects" test. Plaintiff contends that because Defendant ROI used the ROT Trademark, "ROI's actions were a direct aim at Plaintiff in an attempt to profit off of ROT's good standing and reputation within industry consumers, especially those located in Pennsylvania." (Doc. No. 19 at 19.) Plaintiff further claims that jurisdiction should be found in Pennsylvania based on the "effects of ***ROI's North Carolina conduct*** in Pennsylvania." (Id. at 14.) However, as ROI persuasively argues, although Printfly alleges that the advertisements are accessible in Pennsylvania, it cannot show "how from that fact alone, it can be inferred that [ROI] directed its effects towards Pennsylvania residents." (Doc. No.

6

13-1 at 14) (citing Barrett v. Catacombs Press, 44 F. Supp. 2d 717, 728 (E.D. Pa. 1999)). Case law is clear on this point: there must be "something more" than a mere advertisement to justify the exercise of personal jurisdiction over a non-resident corporation. See S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc., 79 F. Supp. 2d, 541 (E.D. Pa. 1999). Even though Pennsylvania residents may be able to Google search the ROT trademark, "they are but a fraction of other worldwide Internet users who" can view the mark. Barrett, 44 F. Supp. 2d at 731 (finding no specific jurisdiction under the "effects" test).

Furthermore, Printfly has not produced any evidence to show that ROI targeted Pennsylvania through the advertisement. Although Printfly points to an order confirmation displaying that, through its agents, it purchased items from the Thread Logic's website and mailed them to individuals residing in Pennsylvania (Doc. No. 10, Ex. A), that alone does not give rise to any significant levels of contact with users in Pennsylvania. See S. Morantz, Inc., 79 F. Supp. 2d at 542 (finding "[o]ne machine, four videos and five e-mails do not demonstrate the kind of contacts contemplated in Zippo, where defendant had consummated 3,000 contracts with residents of Pennsylvania over the Internet, and other such cases."). In addition, ROI also offers the affidavit of the President and Co-Owner of ThreadLogic, Jeff Taxdahl, in which Mr. Taxdahl states that ThreadLogic "does not specifically target advertisements to Pennsylvania residents and makes and ships products from Minnesota." (Doc. No. 13-3 at 1.)

Based on the above facts, Prinftly has not met their burden to withstand a Rule 12(b)(2) motion. See, e.g., Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies . . . [A]t no point may a plaintiff rely on bare pleadings alone in order to withstand a defendant's Rule 12(b)(2)

motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations."); Kurz v. Holiday Hosp. Franchising, LLC, No. 19-cv-2129, 2019 WL 5068646, at *2 (E.D. Pa. Oct. 9, 2019) ("To counter opposing affidavits, plaintiffs may not repose upon their pleadings in this manner. Rather, they must counter defendant's affidavits with contrary evidence[.]" (internal quotation marks and citations omitted)). Plaintiff has not done so here.

Accordingly, the Court does not have specific jurisdiction over Defendant ROI under Calder's "effects" test and will next assess whether it has specific jurisdiction under the traditional test.[3]

### 2. The Court Does Not Have Specific Jurisdiction Over Defendant ROI Under the Traditional Test

Defendant ROI next argues that the Court does not have specific jurisdiction under the traditional test because Plaintiff cannot meet the three steps required to establish traditional specific jurisdiction. (Doc. No. 13-1 at 13–16.) To reiterate, specific jurisdiction under the traditional test requires the plaintiff to establish the following: (1) the defendant established minimum contacts with the forum state; (2) the litigation "arise[s] out of or relate[s] to" at least one of those contacts; and (3) if the first two requirements are met, exercising personal jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." Ford Motor, 592 U.S. at 352, 358–59. When analyzing personal jurisdiction in the context of internet commerce, the Third Circuit has applied a sliding scale approach. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003) (approving Zippo Mfg. Co. v. Zippo Dot Com, Inc.,

---

[3] Because the Court has found Plaintiff failed to allege Defendant ROI expressly aimed its conduct at Pennsylvania, as required by the third prong in Calder's three-prong "effects" test, there is no need to assess whether ROI committed an intentional tort or whether Plaintiff felt the brunt of the harm in Pennsylvania, the other two prongs of the Calder "effects" test.

952 F. Supp. 1119, 1123–24 (W.D. Pa. 1997)). Under the analysis set forth in Zippo, courts consider where "on a sliding scale of commercial interactivity" the website falls. In this regard:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction.

952 F. Supp. at 1124.

Here, the first prong is dispositive. Defendant ROI did not establish minimum contacts with Pennsylvania. The minimum contacts requirement "has been defined as 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 451 (3d Cir. 2003). Plaintiff contends that ROI directed activities towards Pennsylvania in two ways: (1) through the advertisements that were visible to Pennsylvania residents; and (2) through ROI's own website that allows users to directly interact with ROI. The Court will address each in turn.

First, Printfly does not plead any facts indicating that ROI targeted the advertisement with the ROT Trademark at Pennsylvania, intended to interact with its residents or conduct business there, or otherwise created a "substantial" connection with the state. Instead, Printfly merely states that the advertisement was "part of a deliberate and intentional commercial-advertising strategy intended to drive traffic to Thread Logic to engage in commercial transactions." (Doc. No. 19 at 11.) To support its contention, Printfly argues that because ROI used Plaintiff's ROT Trademark as a marketing hook and Plaintiff is a Pennsylvania based company, '[t]his was a targeted act, calculated to capture the attention of Pennsylvania customers familiar with Plaintiff's brand."

9

(Doc. No. 19 at 12.) However, as explained above, merely relying on unsupported statement is insufficient to defeat ROI's jurisdictional defense. See, e.g., Lionti v. Dipna, Inc., No. 17-cv-01678, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) ("The plaintiff must respond to the defendant's motion [to dismiss for lack of personal jurisdiction] with actual proofs.").

Second, Printfly's argument that because ROI has an "interactive website allowing users—including those from Pennsylvania—to directly interact with ROI," it directed its activities toward Pennsylvania. But this argument also fails. (Doc. No. 19 at 12.) Printfly characterizes ROI's website as interactive because the website allows users to "book a meeting" and offers career opportunities. However, ROI has provided an affidavit by Timothy Seward, Founder and Chief Executive Officer of ROI, who states that ROI's website is informational and intended for businesses with whom ROI works. Mr. Seward further declares that "[n]o services can be purchased directly from ROI's website; rather, any inquiries as to ROI's services are directed to ROI's principal place of business in Raleigh, North Carolina." Thus, the Court will examine ROI's website to determine whether it justifies the exercise of jurisdiction over ROI.

In this regard, the Third Circuit's opinion in Ackourey v. Sonellas Custom Tailors, 573 F. App'x 208 (3d Cir. 2014) is instructive here. In Ackourey, the Third Circuit affirmed the District Courts's holding that the plaintiff failed to meet his burden of showing personal jurisdiction existed. Because the defendant's website had a travel schedule, allowed potential customers only to email request for appointments, and did not allow customers to place orders, make payments, or engage in any business transactions, the court found that the website was essentially passive. Id. at 212–213. Furthermore, the court noted that "even if scheduling appointments alone was sufficiently interactive and commercial under Zippo, [the plaintiff] has failed to provide any

10

evidence that Pennsylvania residents used Defendants' website to schedule appointments." Id. at 212.

Here, ROI's website is an "essentially passive" website for several reasons. First, the screenshots on the website that Printfly relies upon are insufficient to trigger this court's jurisdiction. Although the website is commercial in nature, it is not used to transact business. It is only used to solicit inquiries to generate communication. Second, no services can be purchased directly from ROI's website; it only allows for inquiries to be made. For all these reasons, Printfly has not met the first element of the traditional test by showing that ROI has the minimum contacts with the forum state. This is fatal to its effort to establish personal jurisdiction, and since Printfly does not allege sufficient facts on the first element of the specific jurisdiction requirements, there is no need to discuss the remaining elements.

Accordingly, the Court does not have specific jurisdiction over Defendant ROI under either the Calder "effects" test or traditional test and will grant its Motion to Dismiss (Doc. No. 13) for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

### 3. Jurisdictional Discovery is Not Appropriate in This Case

Because Printfly has thus far not satisfied its burden of showing, by competent evidence, that the Court may exercise personal jurisdiction over ROI, we now turn to their request for jurisdictional discovery.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (quoting Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)). Jurisdictional discovery should be permitted "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the

requisite contacts between [the party] and the forum state." Id.  However, the court may in its discretion deny requests for discovery if discovery would not be "worthwhile."  Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd., 64 F. Supp. 2d 448, 454 (E.D. Pa. 1999) (denying request for jurisdictional discovery where the plaintiff "has offered no suggestion that discovery to investigate specific jurisdiction . . . might be productive").

Printfly seeks discovery of the following categories of information:

1. whether ROI maintains clients or contracts in Pennsylvania;

2. the nature and scope of [ROI's] marketing services for Thread Logic, including the decision to target Plaintiff's name in keyword advertising;

3. the amount of users that searched for "Rush Order Tees" that are located in Pennsylvania;

4. searches for other Thread Logic keywords and campaigns that originated from Pennsylvania;

5. advertisements ROI has directed towards Pennsylvania;

6. ROI's other business activity that results in search traffic for its other clients originating from Pennsylvania, and

7. ROI's other business activities directed to and/or originating from Pennsylvania

(Doc. No. 10 at 22.)

However, before allowing such discovery, Printfly must make a threshold showing that the Court may have specific personal jurisdiction over ROI.  See Clark Capital Mgmt. Grp., Inc. v. Navigator Invs., LLC, No. 06-2334, 2006 U.S. Dist. LEXIS 66989, at *20 (E.D. Pa. Sep. 19, 2006) (citing Toys "R" Us, Inc., 318 F.3d at 456).  But all that Printfly alleges is that ROI "intentionally used Plaintiff's name—a Pennsylvania based company—as a marketing hook.  This was a targeted act, calculated to capture the attention of Pennsylvania customers familiar with Plaintiff's brand."  (Doc. No. 19 at 12.)  However, as explained above, Defendant ROI offered the affidavit of Jeff

12

Taxdahl, in which he states that ThreadLogic "does not specifically target advertisements to Pennsylvania residents and makes and ships products from Minnesota." (Doc. No. 13-3 at 1.) The Third Circuit has held that "a mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous" for purposes of determining whether jurisdictional discovery is warranted. Heartrepreneur, LLC v. Jones, No. CV 18-2417, 2020 WL 2839102 (E.D. Pa. June 1, 2020) (citing Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997). Therefore, the Court will not allow jurisdictional discovery to enable Plaintiff to conduct a fishing expedition on whether specific jurisdiction over ROI exists.

## V. CONCLUSION

For the foregoing reasons, Defendant ROI's Motion to Dismiss (Doc. No. 13) will be granted. An appropriate Order follows.